# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**CARRIE MARIE WRIGHT**                                           **PLAINTIFF**

**V.**                         **NO. 4:17CV00173-JLH-JTR**

**NANCY A. BERRYHILL,**
**Deputy Commissioner for Operations,**
**performing the duties and functions not reserved**
**to the Commissioner of Social Security**                **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I.  Introduction:

Plaintiff, Carrie Marie Wright, applied for disability benefits on May 12, 2015, alleging a disability onset date of July 1, 2014. (Tr. at 20). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 34). The Appeals Council denied her request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II.  **The Commissioner's Decision**:

The ALJ found that Wright had not engaged in substantial gainful activity since the alleged onset date of July 1, 2014. (Tr. at 22). At Step Two, the ALJ found that Wright has the following severe impairments: degenerative disc disease, thyroid disorder, anxiety, and depression. (Tr. at 23).

After finding that Wright's impairments did not meet or equal a listed impairment (Tr. at 23), the ALJ determined that Wright had the residual functional capacity ("RFC") to perform the full range of sedentary work, except that: (1) she could only occasionally stoop, kneel, crouch, and crawl; (2) she could not do any heavy pushing or pulling; (3) she could perform simple, routine tasks with occasional changes in the routine work setting; and (4) she could have only incidental interpersonal contact with the general public, meaning a limited amount of meeting and greeting with no sales or solicitations. (Tr. at 25).

The ALJ found that, based on Wright's RFC, she was unable to perform any past relevant work. (Tr. at 32). However, relying upon the testimony of the Vocational Expert ("VE"), the ALJ found that, based on Wright's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including positions as a final assembler of optical

goods and toy stuffer. (Tr. at 33). Thus, the ALJ concluded that Wright was not disabled. *Id.*

## III.  <u>Discussion</u>:

A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*,

784 F.3d at 477.

B.   Wright's Arguments on Appeal

Wright argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that the ALJ did not give proper weight to the opinions of Wright's treating medical providers, did not fully develop the record, and did not make a proper RFC determination. For the reasons explained below, the Court agrees with Wright.

Wright's main impairments were chronic back pain, anxiety, and depression. She received extensive medical treatment for all of those impairments.

Medical imaging showed abnormalities in her spine. An MRI of the lumbar spine on February 9, 2015 showed transition at the lumbosacral junction and broad based disc displacement at L3-L4 and L5-S1, which contributed to abutment of the existing right L5 nerve. (Tr. at 539). An MRI of the cervical spine on September 25, 2015 showed diffuse disc bulges, proximal foraminal protrusions, and left-sided foraminal narrowing at C3-C4 and C5-C6. (Tr. at 565). An MRI of the thoracic spine on October 30, 2015 showed chronic superior endplate compression fracture at T7, without vertebral body height loss, and tiny central disc protrusions from T5-T6 through T8-T9. (Tr. at 774). This objective medical evidence supports Wright's complaints of ongoing back pain.

From April 2015 to June 2016, Wright had over forty visits to Dr. David Morse, D.C., a chiropractor, and several doctors at Arkansas Pain Centers. Wright regularly complained to Dr. Morse of difficulty in bending, lifting, pulling, and twisting. (Tr. at 465, 489-501, 528-539, 567-594, 777-821). She rated her pain as alternating between a five out of ten and a ten out of ten, and said that even with pain medications, it never got below a five. *Id*. She described the pain as constant, sharp, and stabbing. *Id*. Wright said that she experienced pain when doing household chores.[1] *Id*.

Dr. Morse performed clinical examinations, which showed trigger point tenderness and restricted range of motion in her lumbar and thoracic spine. (Tr. at 466). He diagnosed vertebral fracture, sacroiliac joint dysfunction, degenerative disc disease of the lumbar and thoracic spine, and lumbar radiculitis. (Tr. at 466, 528). The medical doctors at Arkansas Pain Centers diagnosed facet arthropathy, mild facet degenerative changes, and lumbar spondylosis. (Tr. at 467). Over the course of treatment, Wright was prescribed Mobic, Flexeril, Hydrocodone, Oxycodone, and Lidocaine. (Tr. at 465, 489-501, 528-539, 567-594, 777-821). Wright also underwent epidural steroid injections in her back on seven occasions. (Tr. at 591,

---

[1] Wright reiterated this both in her Adult Function Report and at the hearing, stating that she had to take breaks and sit down when doing chores. The Court credits the consistency of Wright's reports. (Tr. at 56-59, 292-295).

654, 780, 788, 807, 818, 827). Her doctors performed medial branch blocks. (Tr. at 489). A consistent diagnosis of chronic pain, coupled with a long history of pain management and drug therapy, supports Wright's allegations of disabling pain. *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998).

Dr. Morse treated Wright at each chiropractic visit with manipulative treatment, neuromuscular re-education, trigger point therapy, and compression. (Tr. at 465, 489-501, 528-539, 567-594, 777-821). He also performed radiofrequency ablation and electric stimulation therapy. *Id.* On several occasions, Wright demonstrated an antalgic gait and was unable to walk on her heels. (Tr. at 480). She also had a positive bilateral Patrick's test and positive test for sacroiliac shearing. *Id.*

Wright's treatment did not end with chiropractic care. She also engaged in physical therapy seven times in early 2015, having complained of considerable soreness and pain. (Tr. at 386-396). Physical therapy helped with the pain to some degree. *Id.* The Commissioner points out that lifting at work was aggravating Wright's condition during the physical therapy sessions. *Id.* Wright's doctor later restricted her to lifting no more than fifteen pounds. (Tr. at 482).

During 2015 and 2016, Wright was also seeing her PCP, Dr. Richard Hayes, M.D., on a regular basis. (Tr. at 480-502, 548-558, 849-895). He diagnosed low back pain and degenerative disc disease. *Id.* He prescribed pain medications. *Id.*

Dr. Morse filled out a medical source statement on July 6, 2015. (Tr. at 527-528). He stated that Wright's back pain would constantly interfere with concentration at work, she would need to recline during the workday, and she would need to take an unscheduled break every fifteen minutes. *Id*. He concluded that she would miss more than four days of work per month. *Id.* The ALJ gave Dr. Morse's opinion little weight because he was "not an acceptable medical source"; the ALJ gave no further explanation for disregarding this opinion. (Tr. at 31).

The Administration's regulations divide sources into acceptable medical sources and "other sources." *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007). The "other sources" grouping includes nurse practitioners, chiropractors, licensed clinical social workers, and therapists, as examples. *Id.*; 20 C.F.R. §§ 404.1513(d), 416.913(d). Information from these sources "cannot establish the existence of a medically determinable impairment, but it may provide insight into the severity of the impairment and how it affects the individual's ability to function." Soc. Sec. Ruling 06-3p; *Sloan,* 499 F.3d. at 888. Ruling 06-3p goes as far as to say that other sources may deserve more weight than an acceptable medical source based on extensive treatment, better supporting evidence, and a better explanation for the opinion. *Id*. Factors to consider are: how often the provider has seen the patient, how consistent the opinion is with other evidence, relevant supporting evidence, and

whether the provider has an area of expertise related to the patient's impairment.[2]
*Id.*

The *Sloan* case and its progeny demonstrate that an ALJ may *not* simply discount the opinion of an "other source" with no further explanation. Dr. Morse treated Wright extensively, he thoroughly documented clinical examinations and modalities of treatment, and he had a specialty particularly relevant to Wright's impairment. The ALJ erred by giving "little weight" to Dr. Morse's opinion, without providing *any* reasons to support that decision.

The ALJ likewise disregarded the opinion of Dr. Richard Hayes, reasoning that because some of his records were redacted, his opinion was unreliable. Wright saw Dr. Hayes over twenty times, and the records included Wright's description of complaints, her diagnoses, medication management, and notes from clinical exams. (Tr. at 480-502, 548-558, 849-895). Because the redactions did *not* significantly diminish the reports of treatment, the ALJ's reason for discrediting Dr. Hayes's opinion is not supported by the facts.[3]

---

[2] The Administration's regulations concerning acceptable medical sources and other sources have been revised since the *Sloan* decision, but the revision only enhances the requirement that an ALJ give good reasons for discounting the opinion of an "other source." *See* 20 C.F.R. §§ 404.1520(c), 404.1527(f)(2).

[3] Dr. Hayes's opinion, dated July 2, 2015, included limitations similar to those found by Dr. Morse. However, Dr. Hayes concluded that Wright would miss work two to three times per month, rather than the four days found by Dr. Morse. (Tr. at 530-531). This small discrepancy aside, the

It is the ALJ's function to review all of the medical evidence and resolve conflicts among the various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). A treating physician's opinion must be discussed by the ALJ and, if rejected, reasons are necessary. *Ingram v. Charter*, 107 F. 3d 598, 602 (8th Cir. 1997); *Prince v. Bowen*, 894 F.2d 283 (8th Cir. 1990). A treating physician's opinion accompanied by medically acceptable clinical or diagnostic data is entitled to controlling weight. *Baker v. Apfel*, 159 F. 3d 1140, 1145-46 (8th Cir. 1998). When supporting clinical and diagnostic data does accompany a treating physician's opinion, it should not be disregarded by the ALJ if the data is consistent with the opinion. *Kelley v. Callahan*, 133 F. 3d 583, 589 (8th Cir. 1998). In this case, the opinions of Dr. Morse and Dr. Hayes were consistent, supported by medical records, and specific in their conclusions. They should have been given more weight.

At the very least, the ALJ should have obtained agency medical consultative opinions, rather than discounting or rejecting the opinions of treating providers, without providing any valid reasons for doing so. The ALJ has a duty to develop the record fully, even when the claimant is represented by counsel, and must order a consultative examination if it is necessary to make an informed decision. *Dozier v.*

---

remainder of their medical source statements are consistent.

*Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). The ALJ "acts as an examiner charged with developing the facts," and must obtain additional evidence when the record is inconclusive. *Richardson v. Perales*, 402 U.S. 389, 410 (1971); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000). In this case, there are no consultative examiner medical opinions; it does not appear that such examinations were ordered by the ALJ. It could be argued that the evidence, even without such opinions, was sufficient on its face to support a finding of disability, but the Court will not go that far, and instead recommends a remand for further development of the record.

It is the ALJ's province to weigh the medical evidence, including evidence favorable and unfavorable to the claimant. Frankly, there is very little medical evidence unfavorable to Wright, short of non-examining consultant opinions. (Tr. at 124, 125, 146, 147). Agency medical examinations would have enhanced the record here, especially since the opinions of Dr. Morse and Dr. Hayes issued a year before the hearing. The ALJ should have ordered consultative medical exams.

While the foregoing failures by the ALJ provide sufficient grounds for reversal, the Court also notes that Wright sought psychiatric treatment for anxiety and depression, and took anxiety medication for the entire relevant time period. (Tr. at 833-952). She also testified that she had an inpatient psychiatric hospitalization at the Bridgeway in 2007. (Tr. at 374). She endorsed suicidal ideations on occasion and

wrecked her car on purpose. (Tr. at 377). Consistent with her own reports of mental illness, Wright's therapist and psychiatrist submitted medical source statements highlighting marked impairments in cognitive functioning skills in a workplace environment. (Tr. at 523-525, 947-952). The opinion of therapist Patricia Scott, LCSW, was submitted before the ALJ's decision. The ALJ gave it little weight because she was not an acceptable medical source. The opinion of psychiatrist Dr. Duong Nguyen, M.D., was dated January 12, 2017 and was submitted to the Appeals Council. It was consistent with that of Ms. Scott, but the Appeals Council did not indicate that it considered the report. Nevertheless, it was consistent with Wright's mental health records. As with the physical impairment, the ALJ should have given more sound reasons for discrediting Ms. Scott's opinion, and he should have ordered a mental diagnostic evaluation before coming to a conclusion about mental impairments.

## V.  <u>Conclusion</u>:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ did not afford proper weight to the opinions of the treating medical providers, and he failed to fully develop the record.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 22nd day of March, 2018.

_____
UNITED STATES MAGISTRATE JUDGE